# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Justin Lee Firestone,**

    **Plaintiff,**

v.                                                **Case No. 10-1404-JWL**

**Hawker Beechcraft International
Service Company and Hawker Beechcraft
Corporation,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this breach of contract action against defendants based on defendants' alleged breach of the employment agreement executed by the parties. The employment agreement contains a severance payment provision, which lies at the heart of plaintiff's claims. That provision guarantees plaintiff severance pay of $650,000 "if [his] employment at Hawker Beechcraft Corporation is involuntarily terminated on or before December 31, 2010." It is undisputed that plaintiff's employment was involuntarily terminated prior to December 31, 2010. Plaintiff, then, moves for an entry of judgment in his favor in the amount of $650,000. He also seeks a determination that the severance payment allegedly owed to him constitutes "wages" within the meaning of the Kansas Wage Payment Act (KWPA), a claim alleged in the third count of his complaint. Defendants, in turn, contend that summary judgment in favor of plaintiff is not appropriate for a variety of reasons, only two of which the court reaches here.[1] First, defendants

---

[1] The court declines to reach the merits of three additional arguments raised by defendants in response to the motion for summary judgment. Defendants contend that summary judgment is inappropriate based on defendants' unilateral mistake as to the

contend that the parties intended that plaintiff would receive the severance payment only if plaintiff was terminated "without cause" but that such language was inadvertently omitted from the employment agreement through mutual mistake. Defendants, then, seek to avoid enforcement of the severance payment provision (or reform the contract) on that basis. Second, defendants contend that the offer letter signed by plaintiff (and upon which plaintiff's claim is based) is simply not an enforceable contract[2] or, at a minimum, that factual questions exist with respect to whether the letter is an enforceable contract such that summary judgment is premature. With respect to plaintiff's KWPA claim, defendants contend that the severance payment sought by plaintiff does not constitute "wages" for purposes of the KWPA.

As set forth in more detail below, plaintiff's motion for summary judgment with respect to his breach of contract claim is denied in light of the existence of genuine issues of material fact concerning whether the written severance pay provision actually reflects the parties' agreement and whether the signed offer letter is an enforceable contract. Plaintiff's motion for

---

circumstances under which plaintiff would be entitled to severance pay and based on plaintiff's alleged resume fraud, which defendants contend bars plaintiff's claim entirely. Defendants, however, have not pled in their Answer either unilateral mistake or fraud of any kind. Because those defenses have not been preserved by defendants, they are not properly before the court. *See* Fed. R. Civ. P. 8(c). Finally, defendant opposes summary judgment on the grounds that plaintiff's claims are barred by the "faithless servant" doctrine. But even defendant concedes that discovery is required to develop the facts supporting this theory. Thus, the court declines to address this theory unless and until defendants are in a position to more fully flesh out their argument.

[2]The court's use of the phrase "Employment Agreement" throughout this opinion is merely for convenience and should not be read as expressing any opinion on the ultimate merits of defendants' argument that the offer letter does not constitute an enforceable contract.

2

partial summary judgment on his KWPA claim is denied as the court declines to reach the merits of that issue on the parties' present submissions.

**I.     Facts**

On December 2, 2009, the parties entered into an employment agreement that provided for plaintiff's employment as "President–Asia Pacific" for defendant Hawker Beechcraft International Service Company at a starting base salary of $300,000 per year.[3] Plaintiff was hired to establish and develop a regional sales office in Hong Kong for the purpose of marketing and selling general aviation aircraft. The parties' written agreement further provides as follows:

> If your employment at Hawker Beechcraft Corporation is involuntarily terminated on or before December 31, 2010, you will receive severance pay of $650,000 payable at your discretion either by lump sum or salary continuance. Salary continuance includes benefit continuance as prescribed by company policy.

The record reflects that defendants' initial written offer to plaintiff did not contain a severance pay provision tied to the termination of plaintiff's employment. Rather, it appears as though defendants' initial written offer (which is not in the record) provided for the payment of $650,000 in severance at plaintiff's option if a change in control in the majority stock ownership of the company occurred prior to December 31, 2010. In responding via e-mail to the initial written offer, plaintiff essentially provided a counter-offer in which he proposed numerous changes to the initial offer, including a proposal that the severance pay provision cover not only

---

[3]The employment agreement consists of a detailed "offer letter" of employment sent to plaintiff, which plaintiff signed on December 2, 2009.

3

a change of company control, but also a material reduction in plaintiff's duties and authority. In addition, plaintiff proposed that he "should receive $650k severance pay if I'm terminated without cause at anytime on or before December 31, 2012."

Defendants, in turn, agreed to include language in the agreement to the effect that if plaintiff believed that his role had been materially and substantially diminished prior to December 31, 2012, then he could notify the company of his desire to resign his employment and, if the company agreed that his role had been materially and substantially diminished, he would receive severance pay of $650,000. The company also agreed to include plaintiff's requested language regarding severance pay of $650,000 if plaintiff was terminated without cause. According to defendants, they intended to place that language in the final written offer extended to plaintiff. Defendants have submitted evidence, in the form of an affidavit from the individual who signed the written offer on behalf of defendants, that the "without cause" language was inadvertently omitted from the final offer and that defendants did not notice the mistake until long after the parties executed the agreement. According to defendants, then, the severance pay provision was not intended to apply if plaintiff was terminated for cause but only, for example, in the event of a reduction in force. In contrast, plaintiff avers that he did not intend that the $650,000 severance payment would not apply if he was terminated for cause.

Defendants terminated plaintiff's employment in October 2010 based on plaintiff's alleged misuse of company expense accounts. To date, defendants have not paid plaintiff any severance pay.

## II.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure instructs that summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." *Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1227 (10th Cir. 2009) (citing Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). In applying this standard, the court examines the record "and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Id.* at 1227 (citing *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County*, 546 F.3d 1299, 1306 (10th Cir. 2008)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

Where, as here, the moving party has the burden of proof at trial, it may not obtain summary judgment simply by demonstrating an absence of a genuine issue of material fact. *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). Rather, the moving party must establish "as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

## III.    Analysis of Plaintiff's Motion

Plaintiff contends that he is entitled to summary judgment on his breach of contract claim because the employment agreement executed by the parties unambiguously provides that plaintiff is entitled to severance in the amount of $650,000 if plaintiff is "involuntarily

5

terminated." Defendants contend that the contract cannot be enforced as written in light of the parties' mutual mistake. According to defendants, the term actually negotiated and agreed upon by the parties–that severance would be paid if plaintiff's employment was terminated without cause–was inadvertently omitted from the final written agreement by reason of a scrivener's error.

Plaintiff contends that parol evidence cannot be considered because the agreement itself is unambiguous. But as Kansas courts have recognized, the issue of whether the agreement is clear or ambiguous is entirely irrelevant if the written words do not actually set forth the parties' agreement. *Thoroughbred Assocs., L.L.C. v, Kansas City Royalty Co.*, L.L.C., 248 P.3d 758, 767 (Kan. App. 2011). Indeed, Kansas has long embraced the equitable principle "that a document intended to memorialize an agreement 'could be reformed to conform to the original intention of all parties to the instrument, where a mutual mistake was made' in setting forth the provisions of that agreement in writing." *Id.* (quoting *Schlatter v. Ibarra*, 218 Kan. 67, 70 (1975)). Defendants have clearly come forward with evidence that the written words in the December 2, 2010 employment agreement do not "embody the bargain the parties struck." *See id.* Defendants' evidence reflects that plaintiff requested a severance pay provision that would be triggered if plaintiff's employment was terminated "without cause" and that defendants agreed to include that specific request in the final written agreement but that incorrect language was inadvertently placed in the document. Such evidence is sufficient to create a genuine issue of material fact as to whether the employment agreement accurately sets forth the intentions of the parties.

6

According to plaintiff, there is no mutual mistake here because plaintiff never intended the severance pay provision to apply only if he were terminated "without cause." But that merely shows that there is a question of fact as plaintiff's evidence and defendants' evidence conflict. Moreover, there is additional evidence in the record contradicting plaintiff's affidavit in this respect–plaintiff's own e-mail in which he expressly proposes a severance pay provision that would be triggered if he was terminated "without cause." The fact that plaintiff's proposal concerning the severance pay provision set forth a protected termination period through December 31, 2012 rather than December 31, 2010 (as set forth in the parties' written agreement) does not prove, as a matter of law, that no mutual mistake occurred. Thus, plaintiff's affidavit does not close the door on defendant's theory of mutual mistake.

In short, plaintiff has not satisfied his burden on summary judgment–as the party with the burden of proof at trial–that he is entitled to judgment as a matter of law on his breach of contract claim. At the very least, genuine issues of material fact exist with respect to whether the written agreement reflects the actual agreement reached by the parties concerning the severance pay provision. Summary judgment, then, is denied.

Irrespective of the mutual mistake issue, the court also denies summary judgment on the grounds that genuine issues of material fact exist as to whether the signed offer letter constitutes an enforceable contract.[4] As defendants highlight, the signature page of the offer letter states as

---

[4]While defendants have not pled in their Answer that the signed offer letter does not constitute a contract, they are not required to do so because it is not their burden to demonstrate that no contract existed. *See Service Source, Inc. v. Office Depot, Inc.*, 259 Fed. Appx. 768, 773 (6th Cir. 2008) (defendant was not required to assert as affirmative defense

7

follows:

> I hereby accept this offer of employment and agree to the terms and conditions described in this letter. I understand that my acceptance of this offer does not constitute an employment contract and that my employment with Hawker Beechcraft Corporation may be terminated, either by my employer or myself at any time, for any reason, with or without notice.

Plaintiff urges that the letter is quite obviously a binding employment contract and that the parties have always treated it as such. Plaintiff points out conflicting provisions in the offer letter reflecting that the signed offer letter constitutes a contract. Construing the offer letter as a whole, the court cannot conclude as a matter of law that no contract exists. Indeed, it is likely that the language highlighted by defendants was intended only to emphasize the at-will nature of the employment relationship and that defendants were not promising continued employment for any specific period of time. Nonetheless, that language is sufficiently ambiguous to create a factual issue on whether an enforceable contract exists. *See Trevizo v. El Gaucho Steakhouse*, ___ P.3d ___, 2011 WL 1331988, at *6 (Kan. App. Apr. 8, 2011) (contract is ambiguous when language or provisions contain doubtful or conflicting meaning based on a reasonable interpretation of the contract's language).

The court turns, then, to the issue of whether the unpaid severance constitutes "wages" for purposes of the KWPA–an issue on which the court defers ruling until after the parties have had an opportunity to develop their respective arguments more thoroughly and the issue is

---

that no contract existed); *Student Loan Marketing Ass'n ex rel. Sallie Mae Servicing, L.P. v. Hollis*, 34 Kan. App. 2d 541, 545 (2005) (under Kansas law, burden of proof is on the plaintiff to show the execution and existence of the contract alleged in the petition).

presented to the court again through any subsequent motion practice. In the parties' present submissions, each side has relied only on Kansas federal district court cases which, of course, are not binding precedent. The court's function here is to determine what Kansas law says about whether severance pay constitutes wages for purposes of the KWPA or, to the extent Kansas law is unclear, to predict what the Kansas Supreme Court would say about that issue if faced with it. Plaintiff has not discussed how the Kansas Supreme Court's opinion in *Commodore v. Armour & Co.*, 210 Kan. 412 (1968) bears on the issue of whether severance pay constitutes wages under the KWPA and defendants, then, have not had the opportunity to attempt to distinguish *Commodore* from this case. Similarly, defendants have not discussed the many jurisdictions which, in the face of statutory language analogous to the KWPA, have concluded that severance pay does not constitute wages for purposes of those states' wage payment laws and plaintiff, then, has not attempted to distinguish those cases. In short, because the issue of whether the severance pay in this case constitutes wages under the KWPA deserves more consideration than the parties have given to it at this juncture, the court defers ruling on the issue until some future date when the parties have more fully developed their respective positions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for partial summary judgment (doc. 20) is **denied.**

**IT IS SO ORDERED.**

Dated this 2nd day of June, 2011, at Kansas City, Kansas.

                                                   s/ John W. Lungstrum
                                                   John W. Lungstrum
                                                   United States District Judge