# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Justin Lee Firestone,**

> **Plaintiff,**

v.                                              **Case No. 10-1404-JWL**

**Hawker Beechcraft International
Service Company and Hawker Beechcraft
Corporation,**

> **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

Plaintiff filed this breach of contract action against defendants based on defendants' alleged breach of the employment agreement executed by the parties. The employment agreement contains a severance payment provision, which lies at the heart of plaintiff's claims. That provision guarantees plaintiff severance pay of $650,000 "if [his] employment at Hawker Beechcraft Corporation is involuntarily terminated on or before December 31, 2010." It is undisputed that plaintiff's employment was involuntarily terminated prior to December 31, 2010.

Both parties have now moved for summary judgment on plaintiff's claims. Plaintiff contends he is entitled to summary judgment finding defendants liable for breach of contract and owing plaintiff the full severance amount plus an additional $650,000 as a penalty under the Kansas Wage Payment Act (KWPA). Plaintiff also moves for summary judgment on certain defenses asserted by defendants. Defendants, in turn, move for summary judgment. in their favor asserting that plaintiff cannot establish the elements of his claims and, in any event, certain defenses preclude plaintiff's claims entirely. Defendants also move for summary judgment on

plaintiff's KWPA claim on the grounds that the severance pay in this case does not constitute "wages" within the meaning of the Act.  As set forth in more detail below, plaintiff's motion is granted in part and denied in part.  It is granted on defendants' faithless servant defense and mutual mistake defense and is otherwise denied.  Defendants' motion is granted in part and denied in part.  It is granted with respect to plaintiff's KWPA claim and is otherwise denied.[1]

## I.    Facts

The following facts are either uncontroverted or related in the light most favorable to the non-moving party.  On December 2, 2009, the parties entered into an employment agreement that provided for plaintiff's employment as "President–Asia Pacific" for defendant Hawker Beechcraft International Service Company at a starting base salary of $300,000 per year.[2] Plaintiff was hired to establish and develop a regional sales office in Hong Kong for the purpose of marketing and selling general aviation aircraft.  The parties' written agreement further provides as follows:

> If your employment at Hawker Beechcraft Corporation is involuntarily terminated on or before December 31, 2010, you will receive severance pay of $650,000 payable at your discretion either by lump sum or salary continuance.  Salary continuance includes benefit continuance as prescribed by company policy.

---

[1]Defendants have requested that the court hear oral argument on defendants' motion for summary judgment.  Because the court believes that argument would not clarify any issues in the parties' submissions or assist the court in any meaningful way, that request is denied.

[2]The employment agreement consists of a detailed "offer letter" of employment sent to plaintiff, which plaintiff signed on December 2, 2009.

Defendants terminated plaintiff's employment in October 2010 based on plaintiff's alleged misuse of company expense accounts.  Plaintiff contends that the severance provision was triggered by his termination, regardless of whether his termination was deemed a termination "for cause."  Defendants contend that the severance provision is not triggered by a "for cause" termination.  To date, defendants have not paid plaintiff any severance pay.

The record reflects that defendants pursued and recruited plaintiff for employment. Plaintiff did not submit a resume to defendants until after the parties executed the December 2, 2009 written agreement and after he began working for defendants.  Bill Boisture conducted the negotiations on behalf of defendants.  During the parties' early negotiations, Mr. Boisture advised plaintiff that defendants were facing financial difficulties and were laying off employees in response to an economic turndown.  Plaintiff advised Mr. Boisture that he desired a guaranteed term of employment in exchange for leaving his current employment situation.  Mr. Boisture rejected a guaranteed term of employment for plaintiff but promised, in an e-mail exchange, to "get [plaintiff] 1 year severance and benefits in the event we terminate you.  If you resign, there is no severance."  Toward that end, the first draft of defendants' formal written offer to plaintiff contained the following provision:

> If your employment at Hawker Beechcraft Corporation is involuntarily terminated on or before December 31, 2010, you will receive severance pay equivalent to one year's base salary payable at your discretion either by lump sum or salary continuance.

According to Mr. Boisture's deposition testimony, Mr. Boisture understands there to be three types of employment termination–resignation; involuntary termination; and termination for

3

cause.  In any event, this offer letter, and all subsequent offer letters, also rejected the notion of a guaranteed term of employment.  Plaintiff was required to sign the offer letter just below a paragraph that stated as follows:

> I understand that my acceptance of this offer does not constitute an employment contract and that my employment with Hawker Beechcraft Corporation may be terminated, either by my employer or myself at any time, for any reason, with or without notice.

Plaintiff sent a red-lined counterproposal to Mr. Boisture in which, among many other things, he changed the severance provision.  He essentially changed the "equivalent to one year's base salary" language to the amount of $650,000–a figure which plaintiff asserts accounted for his base salary plus all potential bonuses.

Defendants' next offer letter, dated November 2, 2009, incorporated this change to the severance provision as follows:

> If your employment at Hawker Beechcraft Corporation is involuntarily terminated on or before December 31, 2010, you will receive severance pay of $650,000 payable at your discretion either by lump sum or salary continuance.

This draft offer letter also contained a new provision regarding severance, stating that "[s]everance is governed by the Company's Severance Policy in effect at the time of termination."  According to Mr. Boisture, defendants' severance policy generally does not provide severance to employees who are terminated for cause.  This statement regarding defendants' severance policy does not appear in any subsequent drafts of the offer letter.

After receiving the November 2, 2009 offer letter, plaintiff again sent a counter-offer to Mr. Boisture.  This counter-offer was not a red-lined copy of the offer letter, but rather an e-mail

4

communication in which plaintiff simply typed his comments concerning various terms of the offer.  In his November 4, 2009 e-mail, plaintiff states, in relevant part, that "I should receive $650k severance pay if I'm terminated without cause at anytime on or before December 31, 2012."  This is the first instance in which any "cause" language appears in the parties' written correspondence.  Plaintiff testified that the purpose of this counter-offer was to extend the severance term to a three-year period.  He testified that he inadvertently inserted the "without cause" language.  Shortly thereafter, plaintiff "clarified" with Mr. Boisture that the "cause" language was language that he inadvertently included from a prior employment agreement he had with another company.  It is unclear whether that clarification was initiated by plaintiff or in response to an inquiry from Mr. Boisture.

Mr. Boisture then typed in certain responses to plaintiff's e-mail counter-offer and submitted those typed responses, along with the original e-mail, to defendants' human resources department for the purpose of drafting a revised offer letter.  Mr. Boisture did not type a response to the "without cause" language offered by plaintiff.  In his e-mail to the human resources department forwarding plaintiff's e-mail and Mr. Boisture's responsive comments, Mr. Boisture advised the human resources department: "Also please look at para 7, he says [it] looks like some severance language was lifted from another doc and is not in this deal."  The revised offer letter, dated November 5, 2009, does not incorporate the "without cause" language and does not incorporate the proposed December 31, 2012 date.  The severance provision is identical to the prior offer letter:

5

> If your employment at Hawker Beechcraft Corporation is involuntarily terminated on or before December 31, 2010, you will receive severance pay of $650,000 payable at your discretion either by lump sum or salary continuance.

All subsequent drafts of the offer letter, including the signed offer letter, contain the same severance provision. There is no indication that the parties ever discussed again any "cause" limitation on the severance provision.

Additional facts will be provided as they relate to the parties' claims, defenses and specific arguments raised in their submissions.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[3]  In applying this standard, the court views the evidence and make inferences in the light most favorable to the non-movant. *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue.  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Although the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the

---

[3]The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000).

6

nonmoving party, "the nonmoving party must present more than a scintilla of evidence in favor of his position." *Id.* (quoting *Ford v. Pryor*, 552 F.3d 1174, 1177–78 (10th Cir. 2008)).

## III. Whether Defendant has Waived Certain Defenses

As a threshold matter, plaintiff urges that the court must consider his motion for summary judgment without regard for two specific defenses asserted by defendants that, according to plaintiff, the court has previously deemed waived. The court rejects this argument. The court did not deem the defenses "waived" but simply declined to address those defenses in connection with plaintiff's earlier motion for summary judgment because the defenses had not yet been asserted in the Answer and, because the court was denying the motion for partial summary judgment in any event, there was no prejudice to defendants in declining to address those defenses at that time.

Plaintiff filed a motion for partial summary judgment just 3 days after the filing of defendants' Answer. In response to that motion, defendants, in addition to other arguments, argued that summary judgment was inappropriate on the grounds of unilateral mistake and that plaintiff's claims were barred in any event because plaintiff allegedly falsified his resume. The court declined to address the merits of those arguments at that juncture because defendants had not pled either unilateral mistake or fraud in their Answer. Relying on Federal Rule of Civil Procedure 8(c), the court indicated that the defenses were not "properly before the court" because they had not been "preserved" by defendants. The court did not indicate that the

7

defenses had been waived for purposes of the litigation–clearly, such a result would have been unjust in light of the fact that plaintiff's motion was filed just 3 days after the filing of defendants' answer.  The court merely declined to address the merits of the defenses at that juncture when plaintiff had not been put on notice of the defenses (for purposes of filing his motion) through preservation in the Answer.  Had the court not determined to deny plaintiff's motion for partial summary judgment on other grounds it certainly would not have granted summary judgment to plaintiff at that early juncture without establishing a procedure to take into account all the asserted defenses, whether preserved in the answer or not.  *See Ahmad v. Furlong*, 435 F.3d 1196, 1201-02 (10th Cir. 2006) (defendant may raise an affirmative defense for the first time in a post-answer motion if the defense is raised in sufficient time that there is no prejudice to the opposing party).

The purposes of Rule 8(c) have now been satisfied and it is appropriate to consider the defenses in connection with this round of summary judgment briefing.  Plaintiff was put on notice well in advance of trial that defendants intended to assert these two defenses.  Defendants raised them in response to the earlier motion for partial summary judgment; it conducted discovery on the defenses; and it has attempted to include those defenses in the pretrial order (albeit over plaintiff's objection).[4]  The court rejects plaintiff's contention that he has been

---

[4]Although defendants never moved to amend their Answer to include the defenses, they were not required to do so prior to the pretrial order in light of their "constructive amendment" of the Answer through their response to plaintiff's motion for partial summary judgment.  *See Ahmad*, 435 F.3d at 1202.  Therefore, plaintiff's objection to the pretrial order in that respect is overruled.

prejudiced because he declined to conduct his own discovery on the defenses in "reliance" on the court's earlier order. *Ahmad* makes clear that those defenses were properly raised even though the court declined to take them up without notice having been given before plaintiff filed his motion. Indeed, it appears that, despite having the opportunity to raise the waiver issue in connection with defendants' motion to compel discovery responses, plaintiff declined to do so and, instead, objected to discovery requests concerning the resume fraud defense on substantive grounds (such as, that defendants should not be permitted to assert a resume fraud defense because plaintiff did not provide a resume to defendants until after he was hired). Indeed, as noted by Magistrate Judge Sebelius, plaintiff did not dispute that defendants' requests were relevant to defendants' resume fraud defense and Judge Sebelius ordered plaintiff to produce documents responsive to those requests. In such circumstances, plaintiff cannot claim prejudice.

For the foregoing reasons, the court concludes that the defenses of resume fraud and unilateral mistake have not been waived.

## IV.    Resume Fraud

In their motion for summary judgment, defendants contend that plaintiff has forfeited the right to recover on his breach of contract claims because he falsified the resume that he submitted to defendants. By way of background, plaintiff stated on his resume that he was named by *Sports Illustrated* magazine as one of the "Top 30 Marketing Executives in America." Defendants, looking to the factors set forth in cases discussing the after-acquired evidence

9

doctrine, contend that this statement was false; that the misrepresentation was material; that defendants routinely terminate employees who falsify their resumes; and that they would have terminated plaintiff's employment had they known about the misrepresentation on his resume. Plaintiff contends that defendants cannot rely on a resume fraud defense because defendants never relied on plaintiff's resume in making the hiring decision–indeed, plaintiff did not submit his resume to defendant until after the parties executed the employment agreement and after plaintiff began his employment with defendants.  As will be explained, defendants' motion for summary judgment on this defense is denied and, because defendants cannot establish this defense at trial in light of the undisputed facts, this defense is no longer a part of this case.

In support of their motion for summary judgment, defendants rely on the Kansas Supreme Court's decision in *Gassman v. Evangelical Lutheran Good Samaritan Society, Inc.*, 261 Kan. 725 (1997).  In *Gassman*, the plaintiff claimed that her employer breached an implied contract of employment when it terminated her without following certain procedures set forth in an employee handbook.  *Id*. at 729.  During discovery, the employer uncovered evidence, a theft committed by the plaintiff, which would have justified her termination pursuant to the employment handbook.  *Id*. at 726-27.  Based upon this "after-acquired" evidence, the district court granted summary judgment in favor of the employer on plaintiff's breach of contract claim. Id. at 725-26.  On appeal, the Court of Appeals held that an employee is not to entitled to

damages for breach of an implied contract[5] if the employer can show that the plaintiff was guilty of some misconduct of which the employer was unaware; the misconduct would have justified the discharge; and the employer, had it known of the misconduct, would have discharged the plaintiff. *Id*. at 728 (citing *Gassman I*, 22 Kan. App. 2d 632, 644-45 (1996)). The Kansas Supreme Court approved the three-prong test, noting that the test is derived from *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995). *Id*. at 730.[6]

Defendants contend that an application of the three-part *Gassman* test requires summary judgment in its favor as resume fraud is just another "theory" of the after-acquired evidence doctrine. Defendant is correct that the Court of Appeals in *Gassman I* noted three distinct "theories" of the after-acquired evidence doctrine–fraud, legal excuse and unclean hands. But *Gassman I* did not suggest that the three-part test would apply to all theories and, indeed, *Gassman I* noted that the theories of legal excuse and unclean hands applied to the facts before it, while the fraud theory would be "more akin to cases involving resume fraud or material misrepresentations on employment applications." 22 Kan. App. 2d at 640 (citing *Massey v. Trum's Castle Hotel & Casino*, 828 F. Supp. 314, 325 (D.N.J. 1993)). In any event, an application of the *Gassman* test here simply does not defend against plaintiff's breach of contract

---

[5]Although this case involves an express contract rather than an implied contract, the parties have not suggested and the court does not conclude that such is a distinction which makes a difference in applying the *Gassman* analysis.

[6]The Kansas Supreme Court affirmed the application of the after-acquired evidence doctrine to wrongful discharge cases based on breach of an implied contract where public policy concerns are not implicated. *Gassman*, 261 Kan. at 730. Because only private concerns are implicated by the claim here, the court does not address this issue.

11

claim.

An understanding of the rationale for the *Gassman* test helps to illuminate why the test

has no bearing on the particular facts of this case.  As explained by the court in *Gassman I*:

> The after-acquired evidence doctrine in its purest form allows an employer to be relieved of liability in a wrongful discharge lawsuit where it is discovered, normally during litigation, that the employee was guilty of pre-discharge misconduct sufficient for termination that the employer was unaware of and was not relying upon for discharge.  *See Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700 (10th Cir. 1988); Yoo, *The After-Acquired Evidence Doctrine*, 25 Colum. Hum. Rts. L. Rev. 219, 228 (Fall 1993) (the *Summers* rule).  The after-acquired evidence doctrine has its foundation in the logic that an employee cannot complain about being wrongfully discharged because the individual is no worse off than he or she would have been had the truth of his or her misconduct been presented at the outset. *See* Annot., After- Acquired Evidence of Employee's Misconduct as Barring or Limiting Recovery in Action for Wrongful Discharge, 34 A.L.R. 5th 699, 707.

22 Kan. App.2d at 634-35.  In other words, the plaintiff in such cases lacks injury because the

after-acquired evidence independently justifies the termination and supplants the initial (if

perhaps unlawful) termination decision.  Here, even if defendants can prove that they would

have fired plaintiff had they known of the misrepresentation, plaintiff still has a claim for injury.

Under plaintiff's theory of the case and his interpretation of the contract, he is entitled to

$650,000 regardless of the reason for his termination.  Plaintiff contends (and a jury might well

agree) that he is entitled to the severance pay whether he was fired for resume fraud, for expense

account abuse or no reason at all.  To be sure, there will be cases in which the *Gassman* test

applies to a resume fraud defense–when the employer is using the resume fraud to supplant the

initial termination decision–but those facts are not present here.

The "resume fraud" cases that the *Gassman* court alluded to (and distinguished) are those cases (like *Massey*, the case cited by *Gassman I*) in which an employer seeks to bar a contract claim (or, more precisely, to render a contract voidable) where the contract was entered into in reliance on material representations by the plaintiff.  This is, of course, what defendants are trying to do here.  They contend that they are not required to perform any obligations they may have had under the contract because of plaintiff's material misrepresentations on his resume. The Restatement (Second) of Contracts and numerous cases support this position, but require reliance on those representations before the contract is voidable.  See *Restatement (Second) of Contracts* § 164 (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."); *Schiavello v. Delmarva Sys. Corp.*, 61 F. Supp. 2d 110 (D. Del. 1999) (under ordinary contract principles, employer could rescind employment contract and avoid liability for severance pay if it could show that the contract was entered into in relance on material misrepresentations by the plaintiff); *Massey v. Trump's Castle Hotel & Casino*, 828 F. Supp. 314, 325 (D.N.J. 1993) (employer not liable for breach of employment contract if it can show contract voidable due to reliance on material misrepresentations).  It is undisputed here that defendants never relied on plaintiff's resume in making the hiring decision. Plaintiff did not submit a resume until after the execution of his employment agreement and after he began his employment with defendants.  Defendants' resume fraud defense, then, cannot stand.

13

Defendants urge the court to follow Judge Marten's decision in *Walker v. Saga Communications, Inc*., 11 F. Supp. 2d 1292 (D. Kan. 1997), in which Judge Marten concluded that the Kansas Supreme Court, if faced with the issue directly, would not require actual reliance in a resume fraud case under the three-part *Gassman* test. *Walker* is clearly distinguishable from this case.  In *Walker*, the plaintiff submitted his resume in connection with the hiring process (rather than after he began his employment) and Judge Marten concluded that the employer did not need to prove actual reliance on the resume in making the hiring decision so long as the omission or misrepresentation was material. One of the primary cases relied upon by Judge Marten in reaching that conclusion is *Crawford Rehabiliation Servs., Inc. v. Weissman*, 938 P.2d 540 (Colo. 1997).  *Crawford*, like the other cases relied upon by Judge Marten, is a case in which the plaintiff's resume was submitted prior to the start of the employment relationship.  In rejecting a separate reliance element, *Crawford* explains that reliance is "incorporated into the inquiry of whether the employer would have regarded the misstated or omitted fact as important. Employment applications are prepared for the employer, and employers are expected to rely upon them in making employment decisions."  Part of that inquiry, according to *Crawford*, is "whether the employee concealed or misrepresented the fact or facts with the intent of creating a false impression in the mind of the employer."  *Id*. at 549.  All of this underscores the unmistakable conclusion that *Walker* does not provide any basis to alter the court's conclusion here where the resume was not submitted in connection with the employment decision.

In the end, defendants direct the court to no cases with similar facts (i.e., a case in which

14

the misleading resume or employment application was not submitted in connection with the

hiring process) in which reliance is not required.  For the foregoing reasons, defendants' motion

for summary judgment on their resume fraud defense is denied and, because defendants will not

be able to establish this defense at trial in light of the undisputed facts, that defense is no longer

a part of this case.


**V.     Elements of Plaintiff's Breach of Contract Claim**

The essential elements of a breach of contract claim under Kansas law are as follows:

(1) the existence of a contract between the parties; (2) sufficient consideration to support the

contract; (3) the plaintiff's performance or willingness to perform in compliance with the

contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by

the breach.  Pattern Instructions Kansas 4th, Civil § 124.01-A; *Commercial Credit Corp. v.*

*Harris*, 212 Kan. 310, 313 (1973).  In their motion for summary judgment, defendants contend

that plaintiff cannot establish certain elements of his breach of contract claim, including the

existence of a contract; plaintiff's performance or willingness to perform in compliance with the

contract; and defendants' breach of the contract.  More specifically, defendants contend that no

contract exists because the signed offer letter expressly preserves plaintiff's at-will employment

status and, in any event, any contract that was formed must be rescinded in light of defendants'

unilateral mistake.   Defendants further contend that plaintiff cannot establish his own

performance under the contract in light of plaintiff's prior material breach of the contract and

that plaintiff cannot establish defendant's breach because defendant terminated plaintiff for cause.  Plaintiff moves for summary judgment on the first element only–that the December 1, 2009 offer letter constitutes a binding, enforceable agreement.[7]

A.      *Whether the Signed Offer Letter Constitutes an Enforceable Contract*

Both parties move for summary judgment on the issue of whether the December 1, 2009 signed offer letter constitutes an enforceable contract.   Plaintiff contends that the letter undisputedly is a binding contract–the offer setting forth detailed terms concerning the rights and obligations of the parties was signed by defendants' representative; it was expressly "accepted" by plaintiff through his signature; and the agreement is supported by adequate consideration. *See M West, Inc. v. Oak Park Mall, LLC*, 44 Kan. App. 2d 35, 48 (2010).  Defendants contend that plaintiff's claims fail as a matter of law because no binding contract exists.  Defendants' argument is based on the following paragraph from the signature page of the offer letter:

> I hereby accept this offer of employment and agree to the terms and conditions described in this letter.  I understand that my acceptance of this offer does not constitute an employment contract and that my employment with Hawker

---

[7]In an earlier round of summary judgment submissions, defendants asserted the defense of mutual mistake and, in light of that prior assertion, plaintiff moves for summary judgment on that defense.  Defendants do not address that defense in response to plaintiff's motion and they do not address the defense in their own motion for summary judgment. Clearly, the defense has been abandoned.  Plaintiff's motion for summary judgment on this defense is granted. *Hinsdale v. City of Liberal, Kansas*, 19 Fed. Appx. 749, 768-70 (10th Cir. 2001) (affirming district court's grant of summary judgment in favor of defendant on certain claims after concluding that plaintiff had abandoned those claims by failing to address them in response to the defendant's motion for summary judgment).

Beechcraft Corporation may be terminated, either by my employer or myself at any time, for any reason, with or without notice.

According to defendants, the offer letter establishes plaintiff's at-will employment and defendants' ability to terminate plaintiff's employment at any time for any reason. As will be explained, defendants have not shown as a matter of law that no contract exists and, moreover, they have failed to raise any genuine issues of material fact as to whether the signed offer letter constitutes a binding contract. Plaintiff's motion on this issue is granted and defendants' motion is denied.

The question for the court is to determine the parties' meaning in using the phrase "my acceptance of this offer does not constitute an employment contract." On its face it could indicate an intention not to enter into a legally enforceable contract whatsoever. In fact, in denying plaintiff's early filed first motion for summary judgment the court acknowledged that possibility. But, the subsequent course of the litigation, which has fleshed out the totality of the circumstances concerning the parties' relationship and their understanding of it has clarified matters. Both parties throughout this case have consistently construed this language as simply an effort to preserve defendants' right to discharge plaintiff at any time during the course of his employment; that is, that he was an at-will employee. In the pretrial order, for example, defendants summarize this language as follows: "The offer letter expressly states that it does not constitute an employment contract, and that plaintiffs is an employee at-will, who may be terminated at any time for any reason. As such, the offer letter is not a legally enforceable employment agreement, and plaintiff was an employee at-will." Similarly, defendants'

17

submissions on summary judgment focus on plaintiff's at-will employment status and how that status might affect the parties' contractual obligations.  Indeed, any other interpretation of the "does not constitute an employment contract" language (such as, that no contract whatsoever exists between the parties) would render every other term of the offer letter meaningless and is inconsistent with how both parties have treated it.  Thus, the only reasonable construction of the "does not constitute an employment contract" language is that one of the terms of the contract into which the parties entered was that it was for employment at-will.

Defendants maintain that plaintiff's at-will employment status precludes him from recovering on his breach of contract claim.  In support of their argument, defendants rely exclusively on Kansas cases examining whether employment handbooks and other employment documents are sufficient to create express or implied contracts of employment for guaranteed terms as an exception to the employment at-will doctrine.  *See, e.g., Kastner v. Blue Cross & Blue Shield of Kansas, Inc*., 21 Kan. App. 2d 16 (1995).  In such cases, the discharged employee asserts a claim for wrongful termination based on an alleged promise of employment for a specific term or an alleged promise to terminate the employee's employment only for good cause.  Defendants asserts that this case is "analogous" to *Kastner* and other "handbook" cases. It is not.  Plaintiff here is not asserting a claim for wrongful termination; he is not challenging defendants' ability to terminate his employment at any time for any reason; and he does not contend that he is entitled to continued employment under his contract with defendants.  He contends that he is entitled to enforce the severance pay provision of the parties' agreement

18

regardless of defendants' undisputed ability to terminate plaintiff's employment at any time for any reason.

Without question, the terms contained in the December 1, 2009 signed offer letter, including the severance pay provision, constitute a binding agreement. The at-will provision isolated by defendants is simply one term of that agreement. To be sure, an at-will employment contract is nonetheless a contract and plaintiff is entitled to whatever he was promised under that contract. In other words, while an at-will employment contract does not include terms or promises with respect to the timing or manner of termination, it may nonetheless include terms relating to wages, benefits, duties and working conditions. As the Seventh Circuit has explained:

> The lack of a fixed duration of employment does not make the relationship any less contractual. . . . [A]t-will employees, though capable of losing or quitting their employment at any time, are not totally without enforceable contractual rights: "Wages, benefits, duties, working conditions, and all (but one) of the other terms are specified and a breach of any of them will give the employee a cause of action for breach of contract."

*Walker v. Abbott Laboratories*, 340 F.3d 471, 476 (7th Cir. 2003) (quotation omitted). Plaintiff's motion for summary judgment on this issue is granted and defendants' motion for summary judgment on this issue is denied.


B.	*Whether the Agreement Must be Rescinded in light of Defendants' Unilateral Mistake*

Defendants next contend that they are entitled to rescission based on the theory of unilateral mistake coupled with plaintiff's fraudulent or inequitable conduct. *See Andres v. Claassen*, 238 Kan. 732, 740 (1986) ("It has long been the law that a written instrument may be

reformed where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and fails to inform him of the mistake or conceals the truth from him."); PIK–Civil 4th 145.05B (A party may be relieved of his or her contractual responsibility if he or she has made a mistake concerning a basic assumption or material fact upon which the contract was based, and the other party to the contract knew of that mistake, had reason to know of the mistake, or caused the mistake.).  In response to defendants' motion, plaintiff contends that no mistake was made; that parol evidence of defendants' alleged mistake is not admissible such that the contract must be enforced as written; and, in any event, that the contract must nonetheless be enforced because the record shows no fraud or inequitable conduct on his part in that he had no reason to believe that the contract as written did not reflect defendants' intent.  As described in more detail below, genuine issues of material fact concerning defendants' unilateral mistake defense preclude granting summary judgment.


1.     Defendants' Purported Mistake

       According to defendants, the uncontroverted facts demonstrate that defendants assumed that the offer letter did not entitle plaintiff to severance if he was terminated for cause and that they never intended plaintiff to collect severance pay if he was terminated for cause.  In support of their argument, defendants highlight that a November 2, 2009 offer letter extended to plaintiff contained a provision stating that "[s]everance is governed by the Company's Severance Policy

in effect at the time of termination."  While this provision does not appear in any subsequent offer letters to plaintiff (there is no evidence in the record that the parties ever discussed this provision and no evidence concerning why the provision was removed from future drafts), defendants contend that it supports their argument that any severance extended to plaintiff was intended to comport with defendants' severance policy.  Pursuant to that policy, according to Mr. Boisture, who testified that he was familiar with the policy, defendants generally do not provide severance to employees who are terminated for cause.  Mr. Boisture further testified that he did not intend for the executed agreement to provide severance to plaintiff if he was terminated for cause and that, as an officer of the company, he would not agree to such a provision in light of his obligation to ensure that company funds are spent appropriately and wisely.  Finally, defendants point to an April 23, 2010 nonqualified stock option agreement executed by the parties which provides that plaintiff's stock option would be terminated if he is terminated for cause.  According to defendants, it makes no sense for the company to include the "for cause" limitation in the stock option agreement but to intentionally exclude that limitation for purposes of the severance agreement.  In essence, defendants concede that a "for cause" limitation on the severance provision was never negotiated with plaintiff, but that defendants' officers assumed that the provision would not apply if plaintiff was terminated for cause.[8]

---

[8]Plaintiff objects to the admissibility of certain evidence proffered by defendants in support of their motion for summary judgment–primarily the testimony of Mr. Boisture procured through the use of leading questions and a KPMG audit report detailing plaintiff's alleged abuse of defendants' travel and expense policy.  The court need not resolve these evidentiary questions now.  The court has not relied at all on the KPMG report in resolving

Plaintiff, in response, contends that defendants cannot establish a unilateral mistake because, unlike those cases in which a party seeks rescission based on a negotiated provision that was omitted from the final contract, defendants here simply failed to propose or negotiate language at the outset that in hindsight they wish they had negotiated. Stated another way, plaintiff contends that the unilateral mistake defense does not extend to mistakes of business judgment such as, according to plaintiff, occurred here. The court concludes, however, that plaintiff has not demonstrated as a matter of law that only a mistake of judgment occurred. This issue, then, cannot be resolved on the summary judgment submissions presently before the court.

Plaintiff also contends that defendants' evidence concerning Mr. Boisture's intent, the November 2, 2009 agreement and the stock option agreement is inadmissible parol evidence, particularly in light of the integration clause contained in the December 1, 2009 signed offer letter. This argument is not persuasive. *See Rosenbaum v. Texas Energies, Inc.*, 241 Kan. 295, 298 (1987) ("The rule that parol evidence is inadmissible to contradict or vary a written contract presupposes an action involving a valid existing obligation."); *Blackledge v. Allison*, 431 U.S. 63, 75 n.6 (1977) (integration clause carries great weight, but does not bar parol evidence and can be set aside on grounds of mistake).

2.      Plaintiff's Knowledge of the Purported Mistake

---

any issues raised by the parties' motions and the court has denied defendants' motion on the issues that pertain to Mr. Boisture's testimony such that there is no prejudice to plaintiff.

As noted above, defendants' unilateral mistake defense also requires proof that plaintiff knew of defendants' mistake or had reason to know of the mistake.  Defendants assert that plaintiff should have known about the mistake because, in the absence of a "for cause" limitation on the severance payment, the provision provides a perverse incentive for plaintiff to intentionally and quickly get fired based on misconduct so that he could collect the $650,000 and then seek employment elsewhere–essentially collecting 2 paychecks at the same time. Defendants further assert that plaintiff had knowledge of defendants' precarious financial condition and, in light of such knowledge, should have known that defendants would never have agreed to a $650,000 severance payment in the event plaintiff was terminated for cause.

Plaintiff contends that the motion must be denied because there is no evidence that plaintiff should have known about defendants' alleged mistake.  Plaintiff is a sophisticated executive with at least one prior employment agreement containing a "for cause" limitation on severance.  Moreover, there was at least some discussion or communication between the parties here as to whether the severance provision in this agreement should apply only if plaintiff was terminated "without cause."  A reasonable jury, then, could conclude that plaintiff had reason to know that defendants did not intend to negotiate a severance provision under which plaintiff would receive $650,000 if he was terminated for cause even days after his employment began. A trial, then, is required to determine the nature and extent of plaintiff's knowledge concerning whether defendants intended the severance provision to apply in the event of a "for cause" termination.  If the jury concludes that defendants were operating under a mistaken assumption

23

as to the application of the provision and that plaintiff knew or had reason to know of that mistake and sought to take advantage of that mistake, then defendants would be entitled to rescission of the contract.).[9]

### C.    *Whether Plaintiff Can Establish that He Performed in Compliance with the Contract*

In their motion for summary judgment, defendants contend that plaintiff's claims must fail because plaintiff's prior material breach of the employment agreement excused defendants from further performance under the agreement.[10]   In the pretrial order, defendants have asserted three specific alleged prior breaches by plaintiff–plaintiff's violation of defendants' travel and expense policy (defendants contend, for example, that plaintiff routinely submitted expenses for expensive hotel rooms and business class airfare without seeking prior approval for such expenses and submitted personal expenses for reimbursement); that plaintiff's job performance and skill set was inadequate (essentially, defendants contend that plaintiff was incompetent for the position); and that plaintiff did not ensure that his tax returns were timely filed.  As will be

---

[9]To the extent defendants suggest in their summary judgment submissions that there is a separate defense based on "unilateral error," no such defense exists in this case.  The case relied upon by defendants, *Squires v. Woodbury*, 5 Kan. App. 2d 596, 599 (1980), simply discusses alternative contexts in which the defense of unilateral mistake might be applied and, in doing so, substituted the word "error" for "mistake" in describing those different contexts.  Moreover, in the pretrial order, defendants have preserved a defense of unilateral mistake based solely on their mistake coupled with plaintiff's knowledge of that mistake. They have not preserved a theory of unilateral mistake based on undue hardship or unconscionability–or of "unilateral error."

[10]Defendants also frame this issue as plaintiff's failure to demonstrate his willingness to perform under the contract.

explained, defendants have not shown, for purposes of summary judgment, that they are entitled to rescind the contract based on plaintiff's prior material breach of the agreement. At a minimum, defendants have not shown the absence of material factual issues with respect to whether plaintiff committed a prior material breach of the contract. Moreover, defendants have rendered an analysis of their motion more difficult by failing to marshal the evidence relating to this defense as it pertains to the specific terms of the parties' contract.

Under Kansas law, the rescission of a contract or the discharge of obligations under a contract does not arise from every prior breach. Rather,

> [t]he breach must be material and the failure to perform so substantial as to defeat the object of the parties in making the agreement. A breach which goes to only a part of the consideration, which is incidental and subordinate to the main purpose of a contract, does not warrant rescission.

*In re Johnson's Estate*, 202 Kan. 684, 691-92 (Kan. 1969). Defendants have not shown, as a matter of law, that plaintiff's alleged breaches of the contract are so substantial as to warrant rescission. With respect to plaintiff's alleged breach of the travel and expense policy and his poor performance, the materiality question is complicated by defendants' failure to identify any specific contractual provisions which plaintiff's conduct allegedly breached. The December 1, 2009 letter agreement does not reference defendants' travel and expenses policy and does not appear to require adherence to any particular policies whatsoever. While the letter does mention adherence to performance objectives, those objectives are tied only to incentive compensation. Thus, with respect to plaintiff's alleged violation of the travel and expense policy and his allegedly deficient performance, it is unclear how defendants believe that plaintiff was in default

25

of his obligations under the agreement.  To the extent defendants are able to flesh out this argument at trial, the jury will need to determine whether the alleged breaches are material.  *See* E. Allan Farnsworth, *Contracts* § 8.16, at 638 (2d ed. 1990); *Almena State Bank v. Enfield*, 24 Kan. App. 2d 834, 838  (1998) (substantial performance [a particular application of the doctrine of materiality] is a question of fact).

With respect to plaintiff's alleged failure to ensure that his tax returns were timely filed, the letter agreement states as follows: "The Company will provide for assistance in preparing income tax returns but the employee continues to be personally responsible for the timely filing of tax returns and should assure that such filings are made."  But while defendants have tied plaintiff's alleged breach to a particular contractual provision, they have not shown as a matter of law that the alleged breach is a material one, particularly where this provision is identified in the letter agreement as a "benefit" to plaintiff rather than an obligation.  In any event, a reasonable jury could conclude that the tax filing provision in the agreement was not of "such importance" to the contract that the contract "would not have been made without it."  *See* 14 *Williston on Contracts* § 43:6 (4th ed. 2004).

For the foregoing reason, defendants have not demonstrated that they are entitled to summary judgment in light of plaintiff's prior material breach of the agreement.  Questions of fact remain for resolution at trial.

D.    *Whether Plaintiff Can Establish Defendants' Breach of the Contract*

26

Defendants' last argument concerning the elements of plaintiff's contract claim is that plaintiff cannot establish a breach because defendants terminated plaintiff's employment for cause.  According to defendants, extrinsic evidence demonstrates that the intent and purpose of the severance provision was not to provide plaintiff with severance pay if he was terminated for cause.  Defendants contend that because plaintiff undisputedly was terminated for cause, plaintiff cannot establish a breach of the contract.  This argument is rejected for two reasons.  First, as noted earlier, genuine issues of material fact exist as to whether the severance provision is triggered only upon a termination without cause or whether it is also triggered by a termination with cause.  Thus, even assuming that plaintiff undisputedly was terminated for cause, defendants have not shown for purposes of summary judgment that no breach by them occurred.

Second,  plaintiff has come forward with evidence from which a jury could reasonably conclude that plaintiff was terminated without cause and that defendants exaggerated their concern over plaintiff's expense accounts only after realizing that they would otherwise have to pay severance to plaintiff.  Specifically, plaintiff's evidence shows that plaintiff's termination letter was dated October 10, 2010–the same date that defendants announced that 350 office employees and 800 production employees had been laid off as a cost-cutting measure.  Moreover, plaintiff was never replaced in his job position with defendants and his duties were simply absorbed by Mr. Vick.

Defendants, then, have not shown that they are entitled to summary judgment on the grounds that plaintiff was terminated for cause.

## VI.     Whether Plaintiff Was a "Faithless Servant"

Both parties move for summary judgment with respect to the application of the "faithless servant" doctrine.  According to defendants, plaintiff's claims are barred in their entirety by the faithless servant doctrine and, more specifically, plaintiff's failure to act as a good and loyal servant during his employment.   Plaintiff also moves for summary judgment on this issue–seeking a ruling that the doctrine does not apply to the facts of this case.  As will be explained, the evidence in the record would not permit a reasonable jury to conclude that plaintiff was a "faithless servant" during his employment with defendants.  Thus, defendants motion is denied and plaintiff's motion is granted on this issue.

Under the faithless servant doctrine, if an employee's actions "are so disloyal or dishonest that they permeate his service to his employer," the employee forfeits the compensation to which he would otherwise be entitled.  *Hein v. TechAmerica Group, Inc.*, 17 F.3d 1278, 1282 (10th Cir. 1994) (citing *Bessman v. Bessman*, 520 P.2d 1210, 1217-20 (Kan. 1974)).  As explained by the Kansas Supreme Court in *Bessman*, a servant can be faithless in a number of ways, including:

> where the employee is guilty of gross misconduct, or misconduct substantially affecting the contract of employment, in the course of his employment, or has practiced an intentional fraud on his employer, or has proved disloyal to him in a manner substantially affecting the contract of employment, or has assaulted his employer, or has falsified his accounts, or has stolen or embezzled the money of his employer, or has committed other criminal offenses, although not immediately injurious to the person or property of the employer.

*Bessman*, 520 P.2d at 1215 .  The Kansas Supreme Court noted the historical rationale for this rule: "[W]here . . . the employer alleges facts sufficient to show dishonesty and disloyalty on

the part of his employee which permeates the employee's service in its most material and substantial part, the [employee] cannot recover the agreed compensation; for he has failed essentially to give stipulated consideration for the agreed compensation, and is asking for pay for his own wrongdoing."  *Id.*; *accord Burton Enterprises, Inc. v. Wheeler*, 643 F. Supp. 588, 591 (D. Kan. 1986) (faithless servant doctrine covers not only situations when employee diverts financial gain that should have gone to the employer but a variety of unfaithful conduct).

Defendants urge an application of the doctrine based on plaintiff's "forcing his luxurious lifestyle onto the company's accounting ledger while the company was cutting costs and laying off employees."  According to defendants, plaintiff routinely submitted expenses for expensive hotel rooms and business class airfare in contravention of defendants' policy that required pre-approval for such expenses.  Defendants further allege that plaintiff submitted expenses for car services without prior approval and that, on one occasion, he submitted personal expenses for company reimbursement when he and his spouse spent the weekend in New York in advance of company meetings.  Defendants maintain that plaintiff received a personal benefit to the detriment of the company by traveling in high style at the company's expense while the company was attempting to reduce costs.  Plaintiff does not dispute these facts, but adds that the company reimbursed each and every expense submitted by plaintiff and that the expenses were undisputedly incurred in pursuit of his job duties.

Although defendants rely on *Bessman* and *Wheeler* in support of their motion, the facts in *Bessman* and *Wheeler* are readily distinguishable from the facts here.  In *Bessman*, the

doctrine was applied to defeat the claims of an employee who had pocketed bribes from various contractors while managing the refurbishment of his employer's property. In *Wheeler*, the court applied the doctrine to bar the claims of an employee who, while employed by the employer, had conspired to establish a competing business. In contrast, there is no evidence (or suggestion) here that plaintiff submitted bogus expenses. Defendants do not dispute that plaintiff actually incurred the expenses for which he sought reimbursement and they do not dispute that those expenses were incurred in connection with plaintiff's job duties (with the possible exception of the personal weekend with his spouse, which they reimbursed anyway). The court has not uncovered (and the parties have not cited) any cases from other jurisdictions that might shed light on the application of the faithless servant doctrine to these facts. In the absence of such guidance, the court returns to the language in *Bessman* and finds that no reasonable jury–on these facts–could conclude that plaintiff's conduct was so disloyal or dishonest as "to permeate his service" to defendants. Indeed, the record reflects that plaintiff's conduct–while inconsistent with company expectations–did not even generate a written warning or written admonishment of any kind. His supervisor discussed the issue with him on a handful of occasions, but defendants reimbursed each and every expense. Defendants have established, at most, that plaintiff had little regard for his own role in the company's efforts to cut costs. They have not shown that he was faithless servant and, on these facts, no jury could reasonably draw that conclusion. Defendants' motion on this issue is denied; plaintiff's motion is granted.

**VII.    Whether the Unpaid Severance Constitutes Wages for Purposes of the KWPA**

The court turns, then, to the issue of whether the unpaid severance in this case constitutes "wages" for purposes of the KWPA.  The KWPA gives employees the right to receive their "wages due" and concerns when and how those wages are paid. *See* K.S.A. § 44–314.  In those instances when an employer willfully fails to pay an employee his or her wages, the KWPA provides that the employer is liable for both the wages due and a penalty in an amount up to 100% of the unpaid wages.  *See id.* § 44–315(b).  The KWPA defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."  *Id.* § 44-313(c).  Kansas Administrative Regulations defines "or other basis" within the meaning of K.S.A. § 313(c) as:

> all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable.

K.A.R. § 49-20-1(d).

To date, Kansas courts have not directly addressed the issue of whether or in what circumstances severance pay constitutes "wages" for purposes of the KWPA.  In *Commodore v. Armour & Co.*, 210 Kan. 412 (1968), the court was faced with a determination of whether an assignment of separation pay was tantamount to an assignment of future wages for purposes of

31

the general rule that wages earned after a bankruptcy adjudication become the property of the bankrupt clear of the claims of all creditors. *See id.* at 418-419. The court ultimately concluded that the plaintiff's separation pay constituted wages under the terms of the applicable collective bargaining agreement. *See id.* at 420-21. According to plaintiff, *Commodore* supports the same conclusion here.

*Commodore*, however, is distinguishable in several important respects. First, the court in *Commodore* was not addressing the meaning of the terms "wages" as used in the KWPA and no statutory scheme was at issue in that case. Second, the severance pay provision in *Commodore* was contained in a collective bargaining agreement and the court noted in its analysis that "separation pay is generally considered wages when provided for by collective bargaining agreements." *Id*. at 420. But most importantly, the collective bargaining agreement in *Commodore* expressly defined separation pay as "earned during periods of employment with the Company," and it was calculated based upon an employee's wage history and length of employment such that the longer an employee worked for the Company, the higher that employee's severance allowance climbed. *Id*. at 417, 420. As explained by the court:

> Under the terms of the agreement in question, plaintiff's continuing, in a satisfactory manner, his services in Armour's employment was an important part of the consideration for separation pay. He was paid weekly wages for his ordinary services. Separation pay constituted additional wages for continuing in employment until termination . . . Entitlement to separation pay required substantial services by way of continued employment and termination thereof under the required conditions on the part of plaintiff subsequent to his adjudication in bankruptcy.

*Id.* at 421.

By contrast, the parties' agreement here provides for a payment of $650,000 to plaintiff if his employment is involuntarily terminated before December 31, 2010.  Unlike *Commodore*, then, plaintiff's severance is in no way tied to his continued employment.  Indeed, if he remained employed after December 31, 2010, he was entitled to no severance at all under the agreement and, conversely, he was entitled to the full amount of severance if his employment was involuntarily terminated just one day into his employment.  In that regard, plaintiff's entitlement to severance pay did not require any services on the part of plaintiff.  Clearly, then, plaintiff was not "earning" severance pay over the course of his employment as in *Commodore*.

Because Kansas courts have not directly addressed the issue here, the court looks to other jurisdictions to see whether and when courts have treated severance pay as "wages" for purposes of wage payment statutes with language analogous to the KWPA.  Plaintiff directs the court to cases in Texas, Colorado and Pennsylvania to support his contention that severance pay constitutes wages under the KWPA.  These cases are not persuasive to the court.  The Texas case, *General Electric Capital Corp. v. ICO, Inc*., 230 S.W.3d 702 (Tex. App. 2007), concerns not whether severance pay constitutes "wages" but whether it constitutes "compensation for personal service" for purposes of establishing an exemption in a garnishment proceeding.  The Colorado case relied upon by plaintiff concerns a prior version of the Colorado Wage Collection Act.  *See Fang v. Showa Entetsu Co.*, 91 P.3d 419 (Colo. App. 2003).  But while the *Fang* court concluded that the severance pay at issue in that case constituted wages within the meaning of the prior version of the CWCA, the court recognized that "not all severance payments" constitute

33

wages, particularly when the payment is not connected to the work performed by the employee. *See id.* at 422.  Moreover, the CWCA has since been amended to specifically exclude severance pay as wages.  *See* Colo. Rev. Stat. § 8-4-101(8)(b).  Finally, the Pennsylvania case relied upon by plaintiff, *Denton v. Silver Stream Nursing & Rehab. Center*, 739 A.2d 571 (Pa. Super. 1999) is not helpful because the definition of "wages" within the Pennsylvania Wage Payment and Collection Law expressly includes "fringe benefits or wage supplements," *see* 43 P.S. § 260.2a, and the KWPA definition is simply not that broad.

The cases that are more persuasive to the court are those in which the definition of "wages" in the particular state's Wage Payment statute mirrors the definition of "wages" in the KWPA.  Connecticut's Wage Payment statute, for example, defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."  C.G.S.A. § 31-71a.  Colorado state courts and federal courts sitting in Colorado have routinely held that severance pay is generally not recoverable as "wages" in a civil action under § 31-72.  *See Drybrough v. Acxiom Corp.*, 172 F. Supp. 2d 366, 371 (D. Conn. 2001); *Eddlemon v. Stauffer Chem. Co.*, 1990 WL 138214, at *5-6 (D. Conn. 1990); *Mangiofico v. McKelvey*, 2005 WL 1155194, at *3 (Conn. Super. 2005); *see also McGowan v. Administrator*, 220 A.2d 284, 286 (Conn. 1966) (severance pay not considered wages for purposes of unemployment compensation statute because "wages cease when employment does").

Similarly, Indiana's Wage Statute defines "wages" as "all amounts at which the labor or

34

service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece or commission basis, or in any other method of calculating such amount." *See Design Indus., Inc. v. Cassano*, 776 N.E.2d 398, 401-02 (Ind. App. 2002). In Cassano, the court held that a severance payment did not constitute wages for purposes of the Wage Statute because the payment applied only in the event of a termination and, in such circumstances, could not be considered earned wages for services performed. *Id*. at 402. Nebraska's Wage Payment and Collection Act is also analogous to the KWPA, although it includes fringe benefits. It defines "wages" as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." *See Heimbouch v. Victorio Ins. Serv., Inc.*, 369 N.W.2d 620 (Neb. 1985). In *Heimbouch*, the court held that a severance payment is not compensation for services rendered but more akin to liquidated damages due upon termination of the agreement. *Id*. at 624.

Ultimately, the court believes that the Kansas Supreme Court, if faced with the issue, would conclude that the severance payment under the particular employment agreement in this case does not constitute "compensation for labor or services rendered" within the meaning of the KWPA. The payment is not tied to plaintiff's continued employment in any way; he did not earn the severance pay over the course of his employment; and he owed no services in exchange for the severance pay. In such circumstances, the court will not read the term "wages" so broadly as to include the severance pay at issue here within the narrow definition of wages under the

KWPA.  *See Prozinski v. Northeast Real Estate Servs., LLC*, 797 N.E.2d 415, 421 (Mass. App. Ct. 2003) (any argument that the term "wages" in Wage Payment Act should be construed broadly to include severance is properly addressed to the Legislature).  Defendants' motion for summary judgment on plaintiff's KWPA claim is granted and plaintiff's motion is denied.[11]

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for summary judgment (doc. 69) is **granted in part and denied in part**; defendants' motion for summary judgment (doc. 85) is **granted in part and denied in part**; defendants' motion for oral argument (doc. 112) is **denied**.

**IT IS SO ORDERED.**

Dated this 2nd day of March, 2012, at Kansas City, Kansas.

 s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[11]Because the court has granted defendants' motion in any event, it declines to address defendants' argument that the KWPA does not apply to high-level executives.