# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JUSTIN LEE FIRESTONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-1404-JWL |
| | ) | |
| HAWKER BEECHCRAFT | ) | |
| INTERNATIONAL SERVICE | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

This matter comes before the Court upon Defendants' Motion for an Order Imposing Sanctions on Plaintiff Justin Lee Firestone for Violation of Discovery Orders and Spoliation of Evidence (ECF No. 94). For the reasons explained below, Defendants' motion is granted in part and denied in part.

## I.    Background

On or about December 2, 2009, Plaintiff and Defendants purportedly entered into an employment agreement whereby Plaintiff would be provided with a $650,000 severance payment if Defendants involuntary terminated Plaintiff's employment.[1]  On October 22, 2010, Defendants terminated Plaintiff's employment.[2]  Plaintiff then filed this action alleging Defendants breached the parties' employment agreement by failing to pay the $650,000 severance payment and failing to pay other earned amounts and benefits, including Plaintiff's 2009 and 2010 foreign tax liability.[3]

---

[1] Am. Compl. ¶¶ 6–7, ECF No. 16.

[2] *Id*. ¶ 13 and Ex. B attached thereto; Answer ¶ 13, ECF No. 17.

[3] Am. Compl. ¶ 23.

Defendants argue that Plaintiff is not entitled to the severance payment because his employment was terminated for cause. Specifically, Defendants contend that they fired Plaintiff because he misused company funds and unsatisfactorily performed his job duties. Defendants also believe that Plaintiff is not entitled to the claimed compensation because he purportedly failed to act as a good and faithful servant by copying or removing confidential information from Defendants' computer system.

Defendants conducted a forensic analysis of the company-owned laptop computer used by Plaintiff during his employment. The analysis purportedly revealed that on August 18, 2010, twelve USB devices were attached to Plaintiff's laptop.[4] In April 2011, Defendants served a Request for Production of Electronically Stored Information and Tangible Things seeking production of the twelve USB devices; Defendants attached to their motion a list of the devices, including their serial numbers.[5] After Plaintiff failed to produce the devices, Defendants moved for an order compelling Plaintiff to produce the USB devices for inspection and testing.[6]

Because Plaintiff failed to respond to Defendants' motion to compel, the Court granted the motion as unopposed on July 18, 2011.[7]  On July 22, 2011, Plaintiff produced eight USB devices,

---

[4] Defs.' Motion to Compel Resps. to Defs.' Reqs. for Produc. of Electronically Stored Information and Tangible Things at 3, ECF No. 54; Mann. Decl. ¶ 2, ECF No. 54-3.

[5] Defs.' Req. for Produc. of Electronically Stored Information and Tangible Things by Defs. to Pl. Justin Lee Firestone, ECF No. 54-1.

[6] Fed. R. Civ. P. 34(a)(1)(A) states that a party may serve on any other party a request to produce and permit the requesting party to inspect and test any electronically stored information stored in any medium.

[7] Order, ECF No. 58.

which he contends are the only USB devices in his possession, custody or control.[8]  But only three

of these USB devices match the serial numbers of the devices requested by Defendants.[9]  The other

five USB devices produced by Plaintiff contain information about Plaintiff's health, information that

predates Plaintiff's employment with Defendants, or were blank.[10]

In early August 2011, Defendants' counsel inquired what happened to the other nine USB

devices purportedly used by Plaintiff.[11]  Plaintiff's counsel indicated that all of the USB devices in

Plaintiff's possession, custody or control had been produced and that Plaintiff was not aware of any

others.[12]  Defendants' counsel questioned Plaintiff about the USB devices during his deposition on

October 18, 2011.  Plaintiff testified that he has not destroyed or given away any USB storage

devices since August 2010 and that he has provided to defense counsel all USB devices in his

possession.[13]  It does not appear that the parties discussed this issue further.

On March 18, 2011, Defendants served Plaintiff with their First Combined Interrogatories,

Requests for Admissions, and Requests for Production of Documents (collectively, "First Discovery

Requests").[14]   On April 18, 2011, Plaintiff served his answers, responses, and objections to

---

[8] Letter from Donald Aubry to Terry Mann (July 22, 2011), ECF No. 94-5; Letter from Donald Aubry to Terry Mann (Aug. 2, 2011), ECF No. 95-9.

[9] E-mail from Terry Mann to Donald Aubry (Aug. 2, 2011), ECF No. 95-8; Mann Decl. ¶ 3, ECF No. 94-6.

[10] Letter from Donald Aubry to Terry Mann (July 22, 2011), ECF No. 94-5.

[11] E-mail from Terry Mann to Donald Aubry (Aug. 2, 2011), ECF No. 95-8; E-mail from Terry Mann to Donald Aubry (Aug. 2, 2011), ECF No. 95-10.

[12] E-mail from Donald Aubry to Terry Mann (Aug. 2, 2011), ECF No. 95-10.

[13] Firestone Dep. 218:12–25, ECF No. 94-2.

[14] Notice of Service of Disc. Reqs., ECF No. 23.

Defendants' First Discovery Requests.[15]   On July 15, 2011, Defendants filed a motion to compel further responses to Requests for Admissions Nos. 1–5 and 8, Interrogatory Nos. 2, 4, 6–8, 10 and 13, and Requests for Production Nos. 1–5, 7–9, 13–14, 18–21, and 25–28.[16]

On September 28, 2011, the Court granted Defendants' motion in part and ordered Plaintiff to produce his diploma, his 2009 and 2010 tax returns, and any documents relating to the untimely filing of his tax returns within fourteen days.[17]   Plaintiff failed to produce the documents within the time specified by the Court.

During his deposition on October 18, 2011, Plaintiff indicated he would work with his counsel to produce the tax information previously ordered by the Court.[18]   On January 10, 2012, Defendants' counsel inquired whether Plaintiff would be producing the requested documents, but apparently never received a response.[19]

In the current motion, Defendants seek sanctions, including dismissal of Plaintiff's claims, for Plaintiff's alleged spoliation of the USB devices.   Alternatively, Defendants seek an order dismissing Plaintiff's claims as a sanction for Plaintiff's failure to comply with this Court's July 18, 2011 Order, which required production of the devices.   Defendants also seek sanctions for Plaintiff's failure to comply with this Court's September 28, 2011 Order.   And Defendants seek the costs that

---

[15] Notice of Service of Pl.'s Resps. to Defs.' Disc. Reqs., ECF No. 32.

[16] Motion to Compel Resps. to Defs.' First Combined Interrogs., Reqs. For Admissions, and Reqs. For Produc. of Docs., ECF No. 57.

[17] Before the motion to compel was filed, Plaintiff had agreed to produce his 2010 tax return once it was prepared.

[18] Firestone Dep. 326:2–6, ECF No. 94-2.

[19] E-mail from Brett Legvold to Donald Aubry (Jan. 10, 2012), ECF No. 95-11; Mann Decl. ¶ 8, ECF No. 94-6.

they incurred in proving the truth of various requests for admissions.

## II. Analysis

### A. Alleged Spoliation of the USB Devices

Spoliation is the "'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"[20] A litigant has a duty to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation.[20] A litigant's duty to preserve evidence extends to electronically stored information.[21]

Federal courts have authority to impose a variety of sanctions for spoliation of evidence, including dismissal of an action.[22] But a "party can only be sanctioned for destroying evidence that it had a duty to preserve, and such duty 'arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'"[23] "This notice may come at hands of differing events, but mostly commonly, a party is deemed to have notice of pending litigation if the party has received a discovery request, a complaint has been filed, or any time a party receives notification that litigation is likely to be commenced."[24]

---

[20] *School-Link Techs., Inc. v. Applied Res., Inc.*, No. 05-2088-JWL, 2007 WL 677647, at *3 (D. Kan. Feb. 28, 2007) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)).

[20] *Workman v. AB Electrolux Corp.*, No. 03-4195-JAR, 2005 WL 1896246, at *5 (D. Kan. Aug. 8, 2005).

[21] *In re Krause,* 367 B.R. 740, 764 (Bankr. D. Kan. 2007).

[22] *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

[23] *Cook v. Olathe Health Sys., Inc.*, No. 10-CV-2133-KHV-DJW, 2011 WL 346089, at *4 (D. Kan. Feb. 2, 2011) (internal quotations and citations omitted).

[24] *Oxford House, Inc. v. City of Topeka*, No. 06-4004-RDR, 2007 WL 1246200, at *3 (D. Kan. Apr. 27, 2007) (internal citations omitted).

The Tenth Circuit has stated that a spoilation sanction is proper where (1) a party had a duty to preserve evidence because it knew, or should have known, that litigation was imminent; and (2) the adverse party was prejudiced by the destruction of the evidence.[25]  As to the second factor, there must be evidence that the moving party was actually, not merely theoretically, prejudiced.[26]  As the moving party, Defendants have the burden to demonstrate spoilation by a preponderance of the evidence.[27]  The Court's decision whether or not to sanction a party for spoilation is reviewed under an abuse of discretion standard.[28]

As previously discussed, Defendants filed a motion to compel the production of twelve USB devices that were purportedly attached to the laptop computer used by Plaintiff while employed by Defendants.  Defendants attached to their motion a list of the twelve USB devices, including their serial numbers.  The Court granted the motion as unopposed and ordered Plaintiff to produce all twelve USB devices within fourteen days.

It now appears that five of the twelve devices were already in Defendants' possession.[29]  For example, four of the devices are identified as "Vodafone Storage (Huawei)."[30]  Plaintiff indicates

---

[25] *Burlington N. & Santa Fe Ry. Co.*, 505 F.3d at 1032.

[26] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1150 (10th Cir. 2009).

[27] *In re Krause,* 367 B.R. 740, 764 (Bankr. D. Kan. 2007).

[28] *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1250 (10th Cir. 2010).

[29] In his initial responses to Defendants' Request for Production of Electronically Stored Information served before Defendants' motion to compel, Plaintiff indicated he had already surrendered or never had possession of five of the devices.  Pl.'s Resp. to Defs.' Req. for Produc. of Electronically Stored Information and Tangible Things at 3, ECF No. 54-4.

[30] Defs.' Req. for Produc. of Electronically Stored Information and Tangible Things by Defs. to Pl. Justin Lee Firestone, Ex. 1, ECF No. 54-1.

that these devices are modems used to provide broadband internet access, not storage devices.[31] Plaintiff surrendered his modem when he was suspended, and the other three modems were distributed to members of his staff.[32]  Another one of the devices listed appears to be Plaintiff's blackberry,[33] which Plaintiff also surrendered when he was suspended.[34]  Because Plaintiff produced three of the twelve USB devices requested by Defendants, there appear to be only four outstanding devices.

In the current motion, Defendants allege that (1) Plaintiff was the individual who attached the USB storage devices to his laptop; (2) Plaintiff used the devices to remove or copy Defendants' confidential and proprietary information or evidence of his misuse of company funds;[35] and (3) Plaintiff destroyed the remaining USB devices after he was obligated to preserve them.

In support of their allegations, Defendants rely upon the declaration of Rodney Caudle, a computer forensics analyst who analyzed the laptop computer used by Plaintiff during his employment with Defendants.[36]  Mr. Caudle's analysis purportedly reveals that a minimum of eight and a maximum of twelve USB devices were attached to Plaintiff's laptop on August 18, 2010;[37]

---

[31] Firestone Decl. ¶ 2, ECF No. 104-2.

[32] *Id*. ¶ 4.

[33]  Defs.' Req. for Produc. of Electronically Stored Information and Tangible Things by Defs. to Pl. Justin Lee Firestone, Ex. 1, ECF No. 54-1.

[34] Firestone Decl. ¶ 6 & Ex. A, ECF No. 104-2.

[35] There is no information about whether the information was actually removed or copied from Defendants' computer system.

[36] Caudle Decl. ¶ 1, ECF No. 94-4.

[37] In their initial motion, Defendants represented to the Court that twelve USB devices had been attached to Plaintiff's computer.  *See* Defs.' Motion to Compel Resps. to Defs.' Reqs. for Produc. of Electronically Stored Information and Tangible Things at 3, ECF No. 54.

the August 18, 2010 time stamps were measured in Central Daylight Time.[38]  Most of the time when

Plaintiff was working in the Hong Kong office, he kept his laptop on his desk.[39]  Plaintiff was in

Hong Kong on August 18, 2010 but doesn't remember if he was in his office.[40]

Defendants also rely upon the declaration of Corrinne Markowitz, who was Plaintiff's

assistant during his employment with Defendants and another company, Asia Jet.[41]  Ms. Markowitz

states, "When plaintiff's employment with Asia Jet ended, he used USB flash drives to remove

proprietary information belonging to Asia Jet from his work computer.  He showed me such a flash

drive after we had both become employees of defendants."[42]  Some of the USB devices produced

by Plaintiff contain information "relating to his employment at Asia Jet."[43]

As to Plaintiff's motive, Defendants argue that Plaintiff knew that his job was in jeopardy

on August 18, 2010 and as a result, copied Defendants' proprietary information for his personal

gain.  Defendants provide evidence that between April and August 2010, Plaintiff had been

counseled about his management style and for incurring business expenses that were too costly.

Defendants contend that this evidence establishes that Plaintiff's job performance was "under fire"

---

Defendants now indicate that the exact number is between eight to twelve and cannot be
determined until the actual USB devices are examined.

[38] Caudle Decl. ¶ 2, ECF No. 94-4.

[39] Firestone Dep. 207:10–208:6, ECF No. 94-2.  Plaintiff did not always take his laptop
with him when he traveled.  *Id*. 207:24–209:9.

[40] *Id*. 221:19–22.

[41] Markowitz Decl. ¶ 1, ECF No. 54-5

[42] *Id*. ¶ 2.

[43] Mann. Decl. ¶ 5, ECF No. 94-6.

leading up to August 18, 2010.[44]

On August 19, 2010, Plaintiff was alerted that his supervisor, Shawn Vick, wanted Plaintiff's weekly travel schedule.[45] Plaintiff responded by indicating that he was going to speak with Mr. Vick about the purpose of the request before providing the information.[46] Plaintiff then asked one of his colleagues if he knew the purpose of this request, commenting that it was "insanity."[47] He also asked his assistant if he handled the request professionally.[48] On August 20, 2010, Plaintiff provided the requested information.[49] Defendants characterize Plaintiff as "dramatically overreact[ing]" to the request and as "suspiciously anxious."[50]

Defendants also contend that Plaintiff attempted to "mislead defendants into believing that plaintiff ha[d] not destroyed or withheld USB devices" by producing eight USB devices when only three of them were responsive to Defendants' request.[51]

Plaintiff disputes Defendants' characterization of events and also objects to Defendants'

---

[44] Defs.' Motion for an Order Imposing Sanctions at 31, ECF No. 94.

[45] E-mail from Janelle Ross to Corrinne Markowitz (Aug. 19, 2010 1:56 a.m.), ECF No. 94-9. It appears that Ms. Ross's e-mail was sent from Wichita on August 18, 2010 at 12:56 p.m. but received in Hong Kong on August 19, 2010 at 1:56 a.m. because of the thirteen hour difference in time zones.

[46] E-mail from Justin Firestone to Janelle Ross (Aug. 18, 2010 9:25 p.m.), ECF No. 94-9. The time stamp on Plaintiff's e-mail reflects August 18, 2010 at 9:25 p.m. The time stamps on Plaintiff's e-mails appear to reflect Central Daylight Time. As a result, it appears that it was 10:25 a.m. on August 19, 2010 in Hong Kong when Plaintiff sent his response to Ms. Ross.

[47] E-mail from Justin Firestone to Sean McGeough (Aug. 19, 2010), ECF No. 94-10.

[48] E-mail from Justin Firestone to Corrinne Markowitz (Aug. 18, 2010), ECF No. 94-11.

[49] E-mail from Justin Firestone to Janelle Ross (Aug. 20, 2010), ECF No. 94-9.

[50] Defs.' Motion for an Order Imposing Sanctions at 22, ECF No. 94.

[51] *Id*. at 23.

evidence on various grounds.[52]  As proof that he did not engage in spoliation of evidence, Plaintiff

relies upon the following evidence:

Plaintiff attached USB devices to his laptop while employed by Defendants to transfer

information to a colleague for a presentation or a document that they were working on together,

rather than e-mailing it.[53]  Plaintiff could not recall or remember ever putting twelve USB devices

into his computer in a single 24-hour period.[54]  Plaintiff testified that he has not destroyed or given

away any storage devices since August 2010 and that he has provided to defense counsel all USB

devices in his possession.[55]  Plaintiff also testified it was possible that his colleagues on the sales

team attached USB devices to his computer when they were working on presentations or documents

together.[56]  When he was summoned to Defendants' offices in early September 2010, Plaintiff did

not anticipate any adverse action and was surprised to learn that he was being suspended.[57]

After considering the evidence and arguments by both parties, the Court concludes that

Defendants have not met their burden to prove Plaintiff was the individual who attached the

"missing" four USB devices to his laptop.  As discussed above, it appears that three of the devices

on Defendants' list were modems used by other members of Plaintiff's sales team.[58]  If members of

---

[52] Because the Court denies Defendants' motion for spoliation sanctions on other
grounds, the Court will not address Plaintiff's evidentiary objections.

[53] Firestone Dep. 213:12–214:1, ECF No. 94-2.

[54] *Id*. 217:5–218:11.

[55] *Id*. 218:12–25.

[56] *Id*. 219:12–220:24.

[57] Firestone Decl. ¶ 6, ECF No. 104-2.

[58] *Id*. ¶¶ 3–4.

Plaintiff's sales staff were attaching modems to Plaintiff's laptop, it is certainly possible they attached other devices as described by Plaintiff in his deposition.  There is no evidence that Defendants have ever inquired of Plaintiff's sales team whether they attached USB devices to Plaintiff's laptop.  There is also no evidence that Defendants have searched the Hong Kong office for the remaining four devices.[59]  As a result, it is not clear that these devices are truly "missing" or that Plaintiff was the individual who attached them to his computer.

Even assuming Plaintiff had attached the USB devices, there is not sufficient evidence that he used the devices to copy or remove Defendants' proprietary or confidential information in violation of Defendants' policies.  As discussed above, Plaintiff used USB devices to share information with other employees.  Plaintiff could have attached the devices for a completely innocuous reason.

To support their theory, Defendants place great emphasis on the declaration of Corrinne Markowitz.  Based upon her declaration, Defendants argue that Plaintiff had a "knack for using USB devices to misappropriate company information,"[60] had a "prior habit of misappropriating company information via USB devices,"[61] had a "history of using USB devices to improperly retain proprietary information from employers,[62] and "previously surreptitiously took a prior employers'

---

[59] If Defendants had searched the Hong Kong office, they should have discovered that five of the devices, including the three modems given to other sales members, were already in their possession.

[60] Defs.' Reply to Pl.'s Resp. to Defs.' Motion for an Order Imposing Sanctions at 17, ECF No. 109.

[61] *Id*. at 18.

[62] Defs.' Motion for an Order Imposing Sanctions at 30–31, ECF No. 94.

proprietary information with him via a USB device after leaving that employment."[63]

But Ms. Markowitz's declaration does not establish that Plaintiff surreptitiously removed documents from Asia Jet. Ms. Markowitz does not indicate that she actually observed Plaintiff using USB flash drives to copy information belonging to Asia Jet. The basis of her knowledge appears to be that Plaintiff showed her a USB device containing documents from Asia Jet after she had become an employee of Defendant. It is not clear how Ms. Markowitz concludes that the documents were proprietary or that they were copied by Plaintiff when his employment with Asia Jet ended.

The Court has no information establishing when Plaintiff actually copied the documents, the circumstances surrounding it, whether the documents were proprietary or confidential, and most importantly, whether such action violated Asia Jet's policies. It would have been helpful to know more about the circumstances under which Plaintiff allegedly showed the documents to Ms. Markowitz.

Even assuming the truth of Ms. Markowitz's allegations,[64] Defendants over-emphasize its probative value. The Court is not convinced that one prior instance of removing information from an employer establishes a plan or scheme to remove confidential documents from future employers. Neither party has explained to the Court what information was contained on the three responsive USB devices produced by Plaintiff. This could have helped the Court analyze the issue.[65] Further, there is no evidence that Plaintiff used the devices to remove information about his alleged misuse

---

[63] *Id.* at 22.

[64] As pointed out by Plaintiff, serious questions regarding the admissibility of such a declaration exist. *See* Pl.'s Mem. in Opp'n at 3–4, ECF No. 104. The Court need not resolve those issues for the purpose of this decision.

[65] This also could have been helpful in determining whether Defendants were prejudiced.

of company expenses.

As to motive, Defendants theorize that Plaintiff removed or copied the proprietary information after a period in which his job performance was under fire, and "shortly after"[66] he allegedly over-reacted to a request from his supervisor's assistant, Janelle Ross, for his travel schedule. The timing of events is somewhat difficult to unravel because of the time difference between Wichita and Hong Kong and because some e-mails reflect CDT while others reflect the time in Hong Kong. Further, many of Plaintiff's e-mails appear to be reflected in CDT despite that he was in Hong Kong. Based upon its review of Defendants' exhibits, the Court believes that the following is the proper sequence of events.

Ms. Markowitz received Ms. Ross's e-mail in Hong Kong at 1:56 a.m. on August 19, 2010.[67] At 9:09 a.m. on August 19, 2010, Ms. Markowitz forwarded the e-mail to Plaintiff.[68] Plaintiff responded to Ms. Ross on August 19, 2010 at 10:24 a.m. writing, "Good morning from Hong Kong . . ."[69]

There is a thirteen hour time difference between Wichita and Hong Kong when daylight savings time is in effect.[70] Thus, it appears that (1) Ms. Ross sent the e-mail to Ms. Markowitz at

---

[66] *Id.* at 21 ("the remaining USB devices . . . were attached to his company laptop *shortly after* plaintiff anxiously responded to an innocuous request from his supervisor's assistant . . . ").

[67] E-mail from Janelle Ross to Corrinne Markowitz (Aug. 19, 2010 1:56 a.m.), ECF No. 94-11.

[68] E-mail from Corrinne Markowitz to Justin Firestone (Aug. 19, 2010 9:09 a.m.), ECF No. 94-11.

[69] E-mail from Justin Firestone to Janelle Ross (Aug. 19, 2010 10:24 a.m.), ECF No. 94-11.

[70] When daylight savings time is not in effect, there is a fourteen hour time difference.

12:56 p.m. on August 18, 2010 CDT; (2) Ms. Markowitz forwarded Ms. Ross's e-mail to Plaintiff at 8:09 p.m. on August 18, 2010 CDT;[71] and (3) Plaintiff responded to Ms. Ross at approximately 9:25 p.m. CDT.[72]  Accordingly, for Defendants' theory to be supported, Plaintiff would have needed to attach the USB devices sometime after 8:09 p.m. CDT.  But there is no information as to when on August 18, 2010, the USB devices were attached to Plaintiff's computer, and the Court will not speculate or assume that the devices were necessarily attached after 8:09 p.m. CDT.  This is not necessarily fatal to Defendants' motion, but it potentially undercuts their theory of events.

The Court also believes Defendants have exaggerated the events leading up to August 18, 2010.  Although Plaintiff received counseling on his management style and was instructed to "absorb all personal expenses" and "be thoughtful about business expenses,"[73] there is nothing suggesting that Plaintiff was facing adverse employment action, such as suspension, prior to August 18, 2010.  For example, in an April 8, 2010 e-mail memorializing his feedback to Plaintiff, Mr. Vick concluded by stating "no harm no foul."[74]  Plaintiff's performance evaluation dated August 4, 2010 reflects areas that needed improvement but also reflects areas where Plaintiff performed well.[75] There is no mention of any expense related issues in the performance evaluation. There is simply no evidence that Defendants were considering taking any adverse employment action against

---

[71] *See* E-mail from Corrinne Markowitz to Justin Firestone (Aug. 18, 2010 20:09:11 2010), ECF No. 94-9.  This e-mail appears to reflect CDT.  Considering the thirteen hour time difference, the date and time on this e-mail of August 18, 2010 at 8:09 p.m. is consistent with the date and time of August 19, 2010 at 9:09 a.m. as reflected in ECF No. 94-11.

[72] E-mail from Justin Firestone to Janelle Ross (Aug. 18, 2010 9:25 p.m.), ECF No. 94-9.

[73] E-mail from Shawn Vick to Justin Firestone (Apr. 8, 2010), ECF No. 95-1.

[74] *Id.*

[75] Performance Evaluation (Aug. 4, 2010), ECF No. 95-4.

Plaintiff at that time.[76]  Indeed, when he was summoned to Defendants' offices in early September 2010, Plaintiff did not anticipate any adverse action and was surprised to learn that he was being suspended.[77]

Further, there is nothing suspicious or nefarious about Plaintiff's production of five non-responsive USB devices.  In his initial responses to Defendants' Request for Production of Electronically Stored Information, Plaintiff indicates that he provided eight USB devices to his counsel but that only three of them have files created subsequent to Plaintiff's employment with Defendants.[78]  He then describes the contents of some of the non-responsive devices, including that a "Care Medical" device contains his medical records.  He also explains that two San Disk Cruzer devices are blank and one Jetex device does not contain any readable data.

In the letter accompanying Plaintiff's production, Plaintiff's counsel indicates that one of the devices being produced is a "Care medical keychain."[79]  Counsel's letter also indicates that some of the devices contain information that pre-dates Plaintiff's employment with Defendants.  He then states that two "Scandisk Cruzer" drives are blank and that one Jetex device appears to contain no information and likely has not been formatted.  It should have been clear that Plaintiff was simply producing all USB devices in his possession.  Further, Defendants were expecting Plaintiff to produce twelve USB devices, not eight.  It is difficult to see how producing fewer devices than expected would mislead Defendants.

---

[76] *See* Vick Dep. 165:19–167:1, ECF No. 95-2.

[77] Firestone Decl. ¶ 6, ECF No. 104-2.

[78] Pl.'s Resp. to Defs.' Req. for Produc. of Electronically Stored Information and Tangible Things at 3, ECF No. 54-4.

[79] Letter from Donald Aubry to Terry Mann (July 22, 2011), ECF No. 94-5.

As discussed above, a party can only be sanctioned for destroying evidence that it had a duty to preserve. Even assuming that Plaintiff had attached the remaining four devices to his laptop and copied or removed proprietary information, there is no evidence Plaintiff was still in possession of the devices when he had a duty to preserve them.

Defendants contend that Plaintiff had a duty to preserve the devices on August 18, 2010 because the parties had entered into a stock option agreement that included a non-disclosure and confidentiality provision. The provision provides that Plaintiff would not disclose any trade secret or other confidential information that he obtained as a result of his employment.[80] Without more, it is not clear to the Court how *destroying* the USB devices violated the parties' stock option agreement, and Defendants provide no explanation.

Further, the law is well settled that for purposes of spoliation sanctions, a party's duty to preserve evidence "'arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'"[81] Defendants make no argument that on August 18, 2010, Plaintiff should have known that the USB devices might be relevant to future litigation, and there is nothing suggesting to the Court that Plaintiff should have been on such notice. Accordingly, for purposes of analyzing spoliation of evidence, the Court does not believe Plaintiff had a duty to preserve the devices on August 18, 2010.

Alternatively, Defendants argue that Plaintiff's duty to preserve the devices was triggered on September 2, 2010 when he was suspended by Defendants, informed that he was being

---

[80] Nonqualified Stock Option Agreement ¶¶ 4(a)–(d), ECF No. 94-8.

[81] *Cook v. Olathe Health Sys., Inc.*, No. 10-CV-2133-KHV-DJW, 2011 WL 346089, at *4 (D. Kan. Feb. 2, 2011) (internal citations omitted); *see also See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

investigated for improper business expenses and, according to Plaintiff, informed that he would not be receiving any severance pay. It is possible that at least some litigation was foreseeable as of September 2, 2010. But the issue is whether Plaintiff should have known that the USB devices or whatever information was contained on them, if anything, would be relevant to future litigation. This is difficult for the Court to determine because it has no information about what information was stored on the devices. There is no evidence that they contained information about Plaintiff's alleged misuse of company funds.

As for the devices themselves, it is a stretch to conclude that on September 2, 2010, Plaintiff should have known that Defendants would defend a potential lawsuit for severance pay by arguing that Plaintiff improperly copied or removed Defendants' proprietary or confidential information. It is also not clear to the Court when the purported violation of Defendants' policies occurred – for example, did the violation occur when the information was purportedly removed or copied on August 18, 2010, when Plaintiff purportedly failed to return the devices after he was fired, or when Plaintiff purportedly used the information for his gain. This could also effect the analysis of when Plaintiff's duty was triggered. Regardless, even using a September 2, 2010 date and assuming that Plaintiff copied or removed proprietary information from Defendants, there is no evidence that Plaintiff was still in possession of the devices as of September 2, 2010.

Defendants have failed to establish that Plaintiff (1) attached the USB devices to his laptop; (2) removed or copied confidential or proprietary information or other relevant evidence onto the USB devices; and (3) destroyed the USB devices when he had an obligation to preserve them.

      B.      <u>Violation of the Court's July 18, 2011 Order</u>

As discussed above, on July 18, 2011, the Court granted as unopposed Defendants' motion to compel production of the twelve USB devices purportedly attached to Plaintiff's laptop.[82]  In response to the Court's Order, Plaintiff produced eight USB devices, only three of which were responsive to Defendants' requests.  Pursuant to Fed. R. Civ. P. 37, Defendants seek an ordering dismissing Plaintiff's complaint as a sanction for his failure to comply with the Court's July 18, 2011 Order.

In his initial responses to Defendants' Request for Production of Electronically Stored Information, Plaintiff indicates he provided eight USB devices to his counsel but that only three of them had files that were created subsequent to Plaintiff's employment with Defendants.[83]  Plaintiff's production of only three responsive devices in response to this Court's Order is consistent with his initial representations to Defendants.  Plaintiff could not recall or remember ever attaching twelve USB devices to his computer in a single 24-hour period.[84]  Plaintiff testified that he has not destroyed or given away any storage devices since August 2010 and that he has provided to defense counsel all USB devices in his possession.[85]  For the same reasons discussed with respect to spoliation, the Court does not believe there is sufficient evidence to discredit Plaintiff's statement that he has produced everything in his possession.[86]

---

[82] Order, ECF No. 58.

[83] Pl.'s Resp. to Defs.' Req. for Produc. of Electronically Stored Information and Tangible Things at 3, ECF No. 54-4.

[84] Firestone Dep. 217:5–218:11, ECF No. 94-2.

[85] *Id*. 218:12–25.

[86] *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. 08-1101 JB/RLP, 2010 WL 965528, at *2 (D.N.M. Feb. 26, 2010) (declining to compel further production based upon defendants' representation that they had no responsive documents); *Thompson v. Rios*, No. 07-

Because there is a strong preference in the Tenth Circuit to "decide cases on their merits," the sanction of dismissal should be predicated on a finding of bad faith, willfulness, or fault, rather than an inability to comply.[87]  Because the Court does not believe that there is sufficient evidence to conclude that Plaintiff ever possessed the "missing" USB devices, the Court will not find that Plaintiff violated this Court's July 18, 2011 Order by failing to produce them.

C.      Violation of the Court's September 28, 2011 Order

On September 28, 2011, the Court ordered Plaintiff to produce his diploma, his 2009 and 2010 tax returns, and any documents relating to the untimely filing of his tax returns, including any extensions of time, within fourteen days.[88]  Plaintiff failed to produce the documents prior to the filing of this motion.  Defendants now seek sanctions for Plaintiff's failure to comply with the Court's September 28, 2011 Order.

In response to Defendants' motion, Plaintiff produced a photograph of his college diploma and his 2009 tax return.  Plaintiff indicates that his 2009 tax return was not completed until December 2011 and that his 2010 tax return is not yet completed.[89]  Plaintiff does not explain why he did not produce his diploma earlier.

The Court concludes that Plaintiff violated this Court's September 28, 2011 Order by not

---

cv-00025-PAB-KLM, 2008 WL 5101030, at *1 (D. Colo. Nov. 26, 2008) (accepting that defendants had conducted requisite search of their files and produced responsive documents based upon defense counsel's representation, as an officer of the court, that his clients had no further responsive documents in their possession).

[87] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011).

[88] Before the motion to compel had been filed, Plaintiff had agreed to produce his 2010 tax return once it was prepared.

[89] Firestone Decl. ¶¶ 10–11 & Ex. D, ECF No. 105-1.

producing a copy of his college diploma within 14 days of the Court's Order.  Plaintiff offers no reason why the diploma was not produced sooner.  The Court also finds that Plaintiff violated this Court's Order because he did not produce his 2009 tax return until February 3, 2012 – approximately two months after it was completed and only after Defendants' motion for sanctions was filed.

The Court's September 28, 2011 Order directed Plaintiff to produce all documents responsive to Requests for Production Nos. 3–5.  This included any documents relating to the untimely filing of Plaintiff's personal or business entity tax returns, including any requests for extensions of time.  Defendants indicate that Plaintiff has not produced any such documents.  Although it seems reasonable to believe that such documents exist, the Court does not have sufficient information to resolve this issue at this time.

Fed. R. Civ. P. 37 authorizes this Court to impose a variety of sanctions for a party's failure to obey a discovery order.[90]  Belated compliance with discovery orders does not preclude the imposition of sanctions.[91]  Where a dispositive sanction is not at issue, factors in determining an appropriate sanction under Fed. R. Civ. P. 37 include: (1) the degree of actual prejudice to the moving party; (2) the amount of interference with the judicial process; and (3) the culpability of the non-moving party.[92]  "A court should impose the least onerous sanction that will remedy the prejudice, punish the past wrongdoing, and deter future wrongdoing."[93]  Further, the Court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

---

[90] Fed. R. Civ. P. 37(b)(2)(A).

[91] *Lewis v. Ryan*, 261 F.R.D. 513, 518 (S.D. Cal. 2009).

[92] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

[93] *In re Krause,* 367 B.R. 740, 770 (Bankr. D. Kan. 2007).

including attorney's fees, caused by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust.[94]

Defendants do not address any of the above factors in their motion.  The Court believes that Defendants have suffered only minimal prejudice, if any, by Plaintiff's delayed production of his diploma.  Defendants already had a copy of Plaintiff's transcript that would have likely contained the same or similar information.  Further, Defendants are also partially responsible for any prejudice because they delayed in filing this motion.   Plaintiff was required to produce his diploma by early October, but Defendants did not file this motion until January 20, 2012.[95]  Any interference with the judicial process appears to be minimal – there is no showing that the untimely production of the diploma has delayed resolution of this case.  Considering the relevant factors, the Court finds that an appropriate sanction is to require Plaintiff to pay the costs incurred by Defendants in preparing and filing the portion of this motion that relates to Plaintiff's diploma.

Defendants also now have Plaintiff's 2009 tax return.  Any prejudice from Plaintiff's two month delay in producing the return also appears fairly minimal.[96]  There does not appear to be any significant interference with the judicial process; Defendants have not made any showing that this case was delayed as a result of the delayed production of the 2009 return.  Considering the relevant factors, the Court finds the appropriate sanction is to require Plaintiff to pay the costs incurred by Defendants in preparing and filing the portion of this motion that relates to Plaintiff's tax returns.

---

[94] Fed. R. Civ. P (b)(2)(C).

[95] *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) (stating that a motion for sanctions should be filed without unreasonable delay).

[96] The 2009 return was finalized on December 1, 2011 but not produced until February 3, 2012. Firestone Decl. ¶¶ 10–11 & Ex. D, ECF No. 105-1.

The Court is more concerned whether Plaintiff has produced all documents responsive to Requests for Production Nos. 3–5, particularly documents relating to the timeliness of Plaintiff's tax returns.  To the extent he has not done so, Plaintiff shall produce all documents responsive to Requests for Production Nos. 3–5 within five (5) days of this Order and confirm that all responsive documents have been produced.  If there are no further responsive documents, Plaintiff shall fully describe why there are none.  Plaintiff shall also produce his 2010 tax return immediately once it is prepared.  Failure to comply might result in further sanctions, including evidentiary sanctions.

Within five (5) days of this Order, Defendants shall file a memorandum indicating the dollar amount of expenses they incurred in preparing and filing this motion, along with any documentary support for the requested amount.  Plaintiff, thereafter, shall have five (5) days to file any response contesting the reasonableness of Defendants' claimed expenses.  Defendants, thereafter, shall have three (3) days to file a reply.

>D.     Requests for Admissions

Defendants also seek to recover their expenses, including attorney's fees,  in proving the truth of certain requests for admissions that were denied by Plaintiff.

Fed. R. Civ. P. 37(c) provides a sanction for a party that fails to admit a request for admission served under Rule 36.  If the matter is later proved to be true, the Court must order payment of the reasonable expenses in making that proof unless the request for admission was objectionable, the admission sought was of no substantial importance, the party failing to admit had reasonable grounds to believe it might prevail on the matter, or there was other good reason for the

failure to admit.[97]  Unless one of the four exceptions apply, the award of expenses is mandatory.[98]

Even though Rule 37(c) does not specify the time when a motion for fees must be filed, it "is intended to provide *posttrial relief* in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof *at trial*."[99]  As a result, various courts have held that a motion for expenses for improper failure to admit cannot be made until after trial or summary judgment.[100]  The Court finds the reasoning of these cases to be persuasive.  Accordingly, the Court denies this portion of Defendants' motion without prejudice. Defendants may renew this aspect of their motion once this case is resolved by trial or summary judgment.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants' Motion for an Order Imposing Sanctions on Plaintiff Justin Lee Firestone for Violation of Discovery Orders and Spoliation of Evidence (ECF No. 94) is hereby granted in part and denied in part as described herein.

---

[97] Fed. R. Civ. P. 37(c).

[98] *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 (10th Cir. 1996).

[99] Fed. R. Civ. P. 37 advisory committee's note (emphasis added).

[100] *Joseph v. Fratar*, 197 F.R.D. 20, 23 (D. Mass. 2000); *A & V Fishing, Inc. v. Home Ins. Co.*, 145 F.R.D. 285, 288 (D. Mass. 1993) (noting that remedy provided by Rule 37(c) "is to be invoked only after the requesting party has made its proof" and that the advisory committee notes "make that point explicit"); *Cooper v. State Farm Fire & Cas. Co.*, 568 So.2d 687, 696 (Miss. 1990) (analyzing federal rules and concluding that "Rule 37(c) clearly contemplates a motion after trial, and indeed a motion for sanctions prior to that time would be premature, since the party must have proved the genuineness of the document or the truth of the matter involved before he can move for sanctions."); *see also* 8B Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2290 (indicating that Rule 37(c) clearly contemplates a motion "after trial").

**IT IS FURTHER ORDERED** that within five (5) days of this Order, Defendants shall file a memorandum indicating the dollar amount of expenses they incurred in preparing and filing this motion, along with any documentary support for the requested amount.  Plaintiff, thereafter, shall have five (5) days to file any response contesting the reasonableness of Defendants' claimed expenses.  Defendants, thereafter, shall have three (3) days to file a reply.

**IT IS FURTHER ORDERED** that to the extent Plaintiff has not done so, he shall produce all additional documents responsive to Defendants' Requests for Production Nos. 3–5 within five (5) days of this Order and confirm that all responsive documents have been produced.

**IT IS FURTHER ORDERED** that Defendants' Motion for Hearing (ECF No. 111) is denied.

**IT IS SO ORDERED.**

Dated this 16th day of March 2012, at Topeka, Kansas.

s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
